DAVIE, Sheriff, v. BOARD OF EDUCATION OF HICKMAN CITY SCHOOLS.

Court of Appeals of Kentucky.
June 20, 1952.

.W. C. Tipton, Hickman, N. R. Hughes, Murray, for appellant.

C. K. Davis, Hickman, M. C. Anderson, Wickliffe, for appellee.

CLAY, Commissioner.

This controversy involves the amount of compensation the sheriff of Fulton County may lawfully retain for the collection of 1950 taxes for the Fulton, Hickman, and county schools. The action is for a declaration of rights, and the issues have been consolidated. Under KRS 160.-500, as interpreted by this Court, the sheriff is entitled to retain as compensation the reasonable cost of collecting school taxes, not to exceed 4 percent. Board of Education of Madison County v. Wagers, Sheriff-Tax Collector, Ky., 239 S.W.2d 48.

The sheriff in this proceeding contends that 3.7 percent of all school taxes is a proper allowance; whereas, the school systems contend that any amount in excess of 1.3 percent is excessive. The special judge trying the case found the cost to be 2.2 percent of the total school taxes collected. By appeal and cross-appeal, both sides object to this figure.

1. The school boards first argue that the sheriff's pleadings in the case entitled them to judgment, and that he should not have been permitted to introduce evidence of the expenses of his office. In our opinion the single issue in the case was properly presented by the pleadings, and the evidence introduced was competent.

2. The school boards next contend that the court erroneously placed the burden of proof upon them. We do not think it makes any difference in this particular case which side had the burden, and a proper decision on the merits may be reached without determining that issue.

3. Our next question concerns the propriety of the allowance made. It is stipulated that the total taxes for all purposes collected by the sheriff amounted to roughly $261,000. Of this sum approximately $155,000 constituted school taxes. The latter came to about 60 percent of all those collected.

The sheriff undertook to itemize the expenses of his office over a period of 18 months, from January 1, 1950 to June 30, 1951. He estimated this total cost at about $13,000. The special judge based his estimate on a period of 14 months, and fixed the allocable cost of collecting all taxes at something less than $6,000. The school boards insist that only an 8 month period should be taken into consideration since that is the actual tax collecting period between September and May. The boards estimated the reasonable cost at $3,500.

The boards complain that nowhere in the record was there evidence that the actual expenses paid by the sheriff were reasonable and necessary in the collection of taxes. However, from the manner in which the evidence was presented, and the colloquy between the court and counsel, apparently no one questioned the reasonableness of the items of expense, the issue being whether or not they were allocable to tax collection. As a matter of fact, the school boards used the basic figures offered by the sheriff in making their own estimate of the reasonable cost of collection.

It strikes us that neither the 18, 14 nor 8 month period is the proper one to determine the reasonable cost of collecting school taxes. As they are collected on an annual basis, the proper charge should be based upon a year's cost calculation. The year September 1 to September 1 covers

the entire tax collection period. We do not think the period should be limited to 8 months, as the boards of education contend, which is the time ordinarily elapsing between the date the sheriff receives the tax bills and the time he makes his final settlement with the state. It is shown by the record that it is necessary for the sheriff to employ one or more deputies on an annual basis, and the cost of collecting school taxes cannot fairly be limited to an 8 month period. The services of the sheriff's office must be considered continuous, and while the collection of school taxes constitutes only a part of these services, such taxes must pay their fair share of the total expenses incurred in maintaining the office. On the other hand, one year's taxes should not be charged with expenses for other years.

■ The principal disputed items between the Chancellor's findings and the sheriff's estimates involve deputies salaries, interest and the allowance to the sheriff for his personal services. Without going into figures in detail, we have taken the sheriff's deputies' basic salaries on a 12 month basis. We have rejected the interest item. We are of the opinion that the sheriff is entitled to an allowance of $200 a month on a yearly basis, this being justified by the record which shows that he personally spent a substantial portion of his time in actual tax collection work. This gives us a reasonable cost figure for the collection of all taxes of $7,700 in round numbers, which is 2.9 percent. The sheriff may properly retain this percentage of school taxes collected.

We realize that in cases of this sort exact computations are sometimes difficult and it is necessary to make some estimates with respect to the proper allocation of expenses to the collection of taxes. However, it seems to us that the record was unnecessarily confused, and perhaps unnecessary litigation could be avoided if sheriffs would be more exact in the itemization of their expenses and the school boards would recognize the sheriff's right to a reasonable allowance for his supervisory services.

■ 4. The boards of education object to the allocation of costs on the basis of ⅓ against them and ⅔ against the sheriff. We find nothing unfair in this allocation.

The judgment is reversed for the entry of one consistent with this opinion.